The Honorable William T. Swigert Chief Judge, Fifth Judicial Circuit Marion County Judicial Center 110 Northwest First Avenue, Room 4017 Ocala, Florida 33475
Dear Chief Judge Swigert:
You have asked for my opinion on substantially the following question:
Subsequent to January 1, 1995, may a judgment or decree rendered on a written contract or obligation providing for interest at a greater rate than the amount established by the Comptroller pursuant to section 55.03, Florida Statutes (1994 Supp.), bear interest at the rate specified in such written contract or obligation?
In sum:
Subsequent to January 1, 1995, a judgment or decree rendered on a written contract or obligation providing for interest at a greater rate than the amount established by the Comptroller pursuant to section 55.03, Florida Statutes (1994 Supp.), will bear interest at the rate specified in the written contract or obligation.
Section 55.03, Florida Statutes (1994 Supp.), provides that:
On December 1 of each year beginning December 1, 1994, the Comptroller of the State of Florida shall set the rate of interest that shall be payable on judgments or decrees for the year beginning January 1 by averaging the discount rate of the Federal Reserve Bank of New York for the preceding year, then adding 500 basis points to the averaged federal discount rate. The Comptroller shall inform the clerk of the courts and chief judge for each judicial circuit of the rate that has been established for the upcoming year. The initial interest rate established by the Comptroller shall take effect on January 1, 1995, and the interest rate established by the Comptroller in subsequent years shall take effect on January 1 of each following year. Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Comptroller for time periods after January 1, 1995, for which interest is due. Nothing contained herein shall affect a rate of interest established by written contract or obligation. (e.s.)
Thus, while the amendment establishes a procedure for the setting of a rate of interest payable on judgments or decrees, it leaves essentially intact the prior provision relating to interest rates established by written contracts or obligations.[1]
Prior to its revision, section 55.03, Florida Statutes 1993, provided that:
A judgment or decree entered on or after October 1, 1981, shall bear interest at the rate of 12 percent a year unless the judgment or decree is rendered on a written contract or obligation providing for interest at a lesser rate, in which case the judgment or decree bears interest at the rate specified in such written contract or obligation.
The title of the act states that it was intended to "revis[e] the rate of interest on certain judgments and decrees;" and "provid[e] a procedure for setting the rate of interest on an annual basis by the Comptroller of the State of Florida[.] Nothing in the title to Chapter 94-239, Laws of Florida, indicates any intent to alter the rate of interest chargeable on written contracts that contain a provision setting forth an interest rate.[2]
In this case, the amendment of section 55.03, Florida Statutes (1994 Supp.), does not indicate that the Legislature intended to change the provisions relating to written contracts or obligations.[3] Rather, it seems clear that the changes to the statute go exclusively to the determination of interest rates on judgments and decrees that are not based on such written obligations.[4]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Cf., s. 687.01, Fla. Stat. (1994 Supp.), which states that "[i]n all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03." Chapter 687 regulates lending practices generally and, among other things, establishes usurious interest rates.
[2] See, Board of Public Instruction of Dade County v. Dade County Classroom Teachers' Association, 243 So.2d 210 (Fla. 3d DCA 1971); Op. Att'y Gen. Fla. 76-43 (legislative intent is gleaned from the judicial practice of examining the title of a given act).
[3] Cf., State ex rel. Szabo Food Services, Inc. of North Carolina v. Dickinson, 286 So.2d 529, 531 (Fla. 1973), and Ocala Breeder Sales Company, Inc. v. Division of Pari-Mutuel Wagering, Department of Business Regulation, 464 So.2d 1272, 1274 (Fla. 1st DCA 1985), for the proposition that statutory changes may be designed to clarify what was doubtful and to safeguard against misapprehension as to existing law; Seaboard Coast Line Railroad Company v. O'Connor, 229 So.2d 663, 666 (Fla. 2d DCA 1969), cert. denied, 237 So.2d 754 (Fla. 1970) (the amendment of a statute does not necessarily indicate that the Legislature intended to change the law). And cf., s. 687.01, Fla. Stat. (1994 Supp.), as discussed in footnote 1, supra.
[4] See, Art. I, s. 10, U.S. Const., providing that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . ." and Art. I, s. 10, Fla. Const., stating that "[n]o bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed."